### R. M. MYERS ET AL. V. A. G. PICKETT ET AL.

#### No. 6832.

**Suit to Recover Money Paid on a Judgment upon an Illegal Contract.**—November, 1887, Myers et al. filed suit against Pickett et al. to reopen a judgment rendered June 12, 1885, wherein Pickett et al. recovered of Myers et al. $1000 on their bond as sureties for one Alborn, a sub-mail contractor. The judgment had been paid. Plaintiffs alleged ignorance of the laws of the United States making their bond as Alborn's sureties illegal and void; also alleged misrepresentations by Pickett et al. in the transaction. The trial court sustained a demurrer to the petition. *Held:*

1. The statutes of the United States did not make illegal and void the contract of subletting a mail contract, as alleged by the plaintiffs. Such contract may be avoided by the Postmaster General.

2. The petition was defective in not alleging facts excusing the delay in filing the suit. No allegations were made as to efforts to discover the truth of the matters about which alleged misrepresentations had been made, nor into the requirements of the statutes of the United States touching the matters in dispute.

3. The question of ignorance of the law is not considered, not being necessary to a decision of the issues presented.

APPEAL from Wilson. Tried below before Hon. Geo. McCormick.
The opinion states the case.

*B. F. Ballard,* for appellants.—1. A contract prohibited by law and a bond given to secure its performance is a nullity and can not be recovered on in a suit at law. Seligson v. Lewis & Williams, 65 Texas, 221; Davis v. Sittig, 65 Texas, 498; Wegner Bros. v. Biering & Co., 65 Texas, 507; Read v. Smith, 60 Texas, 379; Glenn v. Matthews, 44 Texas, 400; Robertson v. Marsh, 42 Texas, 151.

2. A subcontract to carry the United States mail made by the contractor without the permission of the Postmaster General of the United States is illegal and a nullity. U. S. Rev. Stats., Act May 17, 1878.

3. A bill of review or petition coram nobis for a new trial may be brought to set aside a judgment after the expiration of the term in which the original judgment was rendered in cases where the defendant was prevented from urging a defense or objection which would or ought to have prevented the rendition of the judgment, and this pre-

vention resulted from the fraud, concealment, or misrepresentation of the adverse party without fault or negligence on the part of the defendant. Heirs of Brown v. Brown, 61 Texas, 45; Johnson v. Templeton, 60 Texas, 238; Harn v. Phelps, 65 Texas, 598; McMurray v. McMurray, 67 Texas, 665; Overton v. Blum, 50 Texas, 423; Nevins v. McKee, 61 Texas, 412; Plummer v. Power, 29 Texas, 14.

4. The court will entertain such petition more than two years after judgment in cases of fraud and concealment or misrepresentation, and in two years after discovery of same or after it might have been discovered by the exercise of reasonable diligence. Heirs of Brown v. Brown, 61 Texas, 45.

*L. S. Lawhon,* for appellees.

HOBBY, PRESIDING JUDGE, *Section A.*—On June 12, 1885, the appellees, A. G. Pickett, Sr., and Dolphin Mead, obtained a judgment for $1000 in the District Court of Wilson County against the appellants, R. M. Myers, J. J. and J. A. Gonger, and Fred. C. Metting. This judgment appellants paid. In November, 1887, more than two years having expired, this "petition, in the nature of a bill of review," was filed, asking that the case be reopened, the judgment set aside, and for the recovery of the money paid thereon. The grounds for the relief sought may be stated to be, in general terms, the alleged ignorance of law on the part of appellants, and the misrepresentation of facts by appellee Pickett. It appears that the appellees Pickett and Mead were original contractors with the United States Government to carry the mail from San Antonio to Helena. This contract was sublet by them to Henry Alborn, who entered into a bond in March, 1883, to said Pickett & Mead for its faithful performance, with the appellees as his sureties, for the sum of $1000 as liquidated damages. Alborn having failed to carry out the contract, suit was brought by appellees for a breach of the bond. The appellants withdrew their answer in said suit, and judgment, as before stated, was rendered against them June 12, 1885.

The appellants allege that the subletting of the contract to Alborn was in violation of the law of the United States, because it was sublet for a sum less than that for which the appellees had contracted to carry said mail, and that it was also sublet without the permission or consent of the Postmaster General; all of which resulted in making said contract void under said law. Appellants allege that they were ignorant of the law prohibiting such subletting at the time said judgment was rendered, and did not discover it till about August, 1887; that appellees knew such to be the law, and represented that they had such consent of the Postmaster General. And further represented that they had been largely damaged by reason of the breach of said bond, and relying upon these representations and not knowing the law of the

United States prohibiting such subletting and declaring it void when so made, the appellants allege that they were induced by appellees to withdraw their answer and consent to the judgment for $1000, which they have paid.

The appellees excepted to this petition on the ground that it appeared therefrom that more than two years had elapsed from the date of the judgment to the filing of the same; and upon the further ground that the matters alleged should have been set up as a defense in the original action, "the only reason alleged for not setting up the same being ignorance of the law, at the time, permitting them to plead such defense."

The exception was sustained and the cause dismissed. From the judgment of dismissal this appeal is taken.

The court's action in sustaining the exception is the basis of the only error assigned.

It is claimed by appellants that "a contract prohibited by law and a bond given to secure its performance is a nullity, and can not be recovered in a suit of law." If, as the appellants contended, the mail contract which Pickett had sublet to Alborn, and to secure the performance of which their bond was executed, was, under the law, void, as was also said bond, because it was done without the consent of the Postmaster General, and was sublet for a sum less than that for which the original contractor had stipulated to perform said contract, it would become important to determine from all of the averments in the petition in connection with the allegation of appellants' ignorance of such law whether these averments are sufficient in this suit to authorize the relief sought. Without attempting a discussion of the familiar common law maxim that ignorance of the law does not excuse, it may be said that the leading principle on which relief is granted in such cases must be that the contract sought to be relieved against does not express the intention of the party, and this is so because of his ignorance of the law. However this may be, it is a branch of the case not necessary to decide.

We shall proceed to briefly refer to the laws which it is claimed made the contract void. The act of Congress relied on is the Act of May 17, 1878, passed at the second session of the Forty-fifth Congress. See chapter 107, page 61, Statutes of United States, said session.

The second section provides that: "Hereafter no subletting * * * of any mail contracts shall be permitted without the consent in writing of the Postmaster General; and whenever it shall come to the knowledge of the Postmaster General that any contractor has sublet * * * his contract, except with the consent of the Postmaster General as aforesaid, the same shall be considered as violated; and the service may be again advertised as herein provided for; and the contractor and his sureties shall be liable on his bond to the United States for any dam-

ages resulting to the United States in the premises." The remaining sections of this act have no reference to the question under discussion.

The Act of May 4, 1882, which was also in force at the date of the execution of the bond, provides in substance that when a contractor shall sublet his contract for a less sum than that for which he contracted to perform the service the Postmaster General may, if he shall deem it for the good of the service, declare the original contract at an end and enter into a contract with the subcontractor without advertising, etc. Sec. 1, Acts of the 1st sess. 47th Cong., p. 54. This section of the act contains also a provision to the effect that "when a contract hereafter made is declared void on account of its having been sublet, the contractor shall not be entitled to one month extra pay," etc.

The contract which by these statutes may be declared to be at end is that made with the original contractor, and this is dependent on contingencies and is clearly discretionary with the head of the postal department of the government.

The leading purpose of the acts mentioned was to prevent speculating contractors from reaping a profit out of the government by subletting for a less sum than contracted for. That the contract was not made absolutely void is evident from the fact that the law recognized that although sublet for a less sum, etc., it might not be "for the good of the service" to declare the original at an end, and the contingency was contemplated also of an adoption or acceptance by the government of the contract sublet, as the statute authorized the department to enter into a like contract with the last subcontractor on the terms he had agreed to perform the same. This would repel the idea that *that* contract was to be considered as void. The statutes referred to can only be fairly construed as making the contract voidable at the option of the government. It does not appear that this right was ever at any time exercised and the contract declared at an end by the only authority clothed with the discretion and power. The head of the postal department not having vacated the contract on any of the grounds stated in the law, and no complaint being made by the proper officer of the government that the contract was unlawfully sublet, it can not be made available to appellant.

We conclude, therefore, that the acts of Congress cited do not make the contract void, and hence it becomes immaterial to consider or inquire into the effect of appellants' allegations of ignorance of the law.

We are also of the opinion that if the appellants' averments of ignorance of the law, in connection with other allegations of mistake of fact, were sufficient to establish a case authorizing equitable jurisdiction, still the petition is altogether defective in its failure to explain why the facts alleged were not discovered sooner, and why this suit was not brought within two years from the rendition of the judgment. In other words, independently of the views before expressed, the peti-

tion does not exhibit a case in which the petitioners are absolved from laches and a want of diligence. These features have always been regarded as essential to a proceeding of this character—a petition in the nature of a bill of review.

No explanation is attempted in connection with the averment that appellants were ignorant of the law when appellees prevailed on them to withdraw their answer and consent to the judgment, or of their failure to consult an attorney or any other person who might reasonably be presumed to have some knowledge of law. It appears from the letter of the Assistant Postmaster General, which is made an exhibit to the petition, that no inquiry was made by appellants upon this point until two years had elapsed from the date of the judgment. So, too, with reference to the allegation that appellees misrepresented the damages sustained by the breach of the contract, which induced appellants to consent to the judgment, and appellants' denial that such damage was in fact sustained. It is not shown when this misrepresentation was discovered or why it could not have been known at least before the expiration of two years.

There is no aspect of the case made by the petition which in our opinion will authorize the relief sought in this action, and we think the judgment should be affirmed.

*Affirmed.*

Adopted May 12, 1891.